UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOANN P.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:20cv241 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

      through December 31, 2022.

2.     The claimant has not engaged in substantial gainful activity since October 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.     The claimant has the following severe impairments: left posterior tibial tendon dysfunction, status post calcaneal osteotomy; rheumatoid arthritis (RA); degenerative changes of the bilateral hands; Sjorgen's Syndrome/sicca; and, chronic ear infections (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance and stoop, but never kneel, crouch, or crawl. The claimant is limited to frequent handling (gross manipulation) and fingering (fine manipulation of items no smaller than a paperclip) with the bilateral upper extremities. The claimant is limited to occasional exposure to wetness.

6.     The claimant is capable of performing past relevant work as an office manager (DOT #169.167-034/SVP 7/sedentary as generally performed, light as actually performed) and an accounting clerk (DOT #216.482-010/SVP 5/sedentary as generally and actually performed). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2016, through the date of this decision (20 CFR 404.1520(f)).

(AR 17- 24).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on April 5, 2021. On June 14, 2021 the defendant filed a

memorandum in support of the Commissioner's decision to which Plaintiff replied on July 9, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

Plaintiff had severe left posterior tibial tendon dysfunction, status post calcaneal osteotomy; rheumatoid arthritis ("RA"); degenerative changes of the bilateral hands; Sjogren's Syndrome/sicca; and chronic ear infections. (AR 17.) In October 2016, Plaintiff underwent left foot surgery. (AR 274.) At the initial level, non-examining State agency reviewing physician J. Sands, M.D. opined in August 2017 that Plaintiff's muscular and mental impairments were non-severe. (AR 80.) Kenneth Neville, Ph.D. opined in July 2017 that Plaintiff's mental

impairment caused mild limitations in understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace. (AR 81-82.) At the reconsideration level, Fernando R. Montoya, M.D. and William A. Shipley, Ph.D. affirmed those opinions in October 2017. (AR 90-93.)

In support of remand, Plaintiff first argues that the ALJ's RFC assessment did not comport with SSR 96-8p's "narrative discussion" requirement. The ALJ found that Plaintiff was limited to the lifting and standing requirements of sedentary work due to increased pain and swelling in the lower and upper extremities with such activities as a result of her rheumatoid arthritis (RA), history of left foot fractures, persistent ear infections, and degenerative changes in the hands. (AR 23.) The ALJ also found that Plaintiff was limited to frequent handling and fingering because of swelling and tenderness as a result of degenerative changes in the hands as well as RA. (AR 23.) Plaintiff contends that the ALJ summarized the record evidence but did not otherwise explain why the record supported these specific RFC conclusions. (AR 20-23); *Perry v. Colvin*, 945 F.Supp.2d 949, 965 (N.D. Ill. 2013) (summarizing the evidence is not the equivalent of providing an analysis of the evidence). Plaintiff argues that SSR 96-8p's narrative discussion requirement demands that the ALJ explain how the evidence supports the RFC conclusions, citing specific medical facts and non-medical evidence. SSR 96-8p; *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about Scott's physical capabilities"). Here, the record contained no treating physician opinion, and the ALJ found the State agency doctors' opinions unpersuasive. (AR 23.) Thus, Plaintiff argues that the ALJ did not identify the evidentiary basis for the RFC conclusions.

Plaintiff points out that the ALJ did not explain the basis for concluding that Plaintiff

5

could sustain the standing requirements of sedentary work beyond stating that a limitation to sedentary work was warranted by pain and swelling due to RA, left foot fractures, persistent ear infections, and degenerative changes in the hands. (AR 23); SSR 96-9p (sedentary work requires up to two hours of standing daily). Plaintiff argues that that conclusion was arbitrary and unsupported by the evidence. *Suide v. Astrue,* 371 F.App'x. 684, 689-90 (7th Cir. 2010) (declining to adopt all medical opinions in the record caused an evidentiary deficit, and it was unclear from the decision how the ALJ arrived at the conclusions in the RFC assessment).

     Plaintiff contends that the evidence shows that Plaintiff could only engage in very limited standing. Plaintiff alleged she could stand for about 20 minutes at a time due to leg pain and stiffness. (AR 55.) Her RA caused stiffness in her joints and pain with walking and extended standing. (AR 48.) She could walk a block before needing to rest for 10 minutes. (AR 207.) Objective evidence which the ALJ summarized, but did not analyze, comports with these allegations. Examination in September 2016 showed tenderness and decreased range of motion to the left ankle; she complained of severe left foot pain with problems walking. (AR 342, 373.) Another examination from that month further showed severe flatfoot deformity with collapse of the medial column and an inability to perform a single heel rise on the left. (AR 373.) In October 2016 Plaintiff underwent a left medializing calcaneal osteotomy, posterior tibial tendon debridement, flexor digitorum longus transfer, spring ligament repair, and gastrocnemius lengthening. (AR 274.) January 2017 x-ray of the left foot showed diffuse osteopenia and evidence of a nondisplaced fifth metatarsal fracture. (AR 379.) In that month she complained of severe pain on the lateral border of the left foot; she had trouble bearing weight on that foot and examination showed distinct tenderness and pain with swelling along the fifth metatarsal. (AR

6

380.) In April 2017 a left foot x-ray showed a nondisplaced fourth metatarsal stress fracture. (AR 385.) In May 2017 examination showed pain along the 4-5 metatarsal shaft region and mild tenderness to palpation of the fourth metatarsal shaft. (AR 387.) June 2017 examination showed hammertoe deformities in both feet as well as evidence of ankle edema bilaterally. (AR 390-91.) In July 2017, examination showed generalized tenderness as well as swelling in the bilateral knees and ankles. (AR 415.) October 2017 examination showed tender knees and bilateral metatarsalgia. (AR 460.)

     Plaintiff maintains that the ALJ did not explain how she determined that this extensive evidence of foot, ankle, and knee abnormalities supported that Plaintiff could stand and walk for even two hours as required by sedentary work given Plaintiff's allegations of greater limitations. SSR 96-8p; SSR 96-9p; *Scott*, 647 F.3d at 710; *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013). The ALJ also stated that Plaintiff was limited to frequent handling and fingering because of swelling and tenderness as a result of degenerative changes in the hands and RA. (AR 23.) However, the ALJ did not explain, as required by SSR 96-8p, why the record supported those specific handling and fingering capacities. The record shows that Plaintiff alleged more significant manipulative restrictions. Her hands were most affected by her RA; she could not open bottles with her hands and needed her husband to do so for her before he left for work—she could not type well and had throbbing pain in her hands. (AR 49-50.) She had 30 minutes of morning stiffness in her hands and it continued throughout the day. (AR 50.) Her hands were stiff and hard to open up. (AR 50.) She tended to drop items and had constant hand pain. (AR 50-51.) She spent about 15 minutes on the computer reading emails and used a cell phone about 10-15 minutes daily to speak to her mother, showing that she only used these devices for verbal communication

or reading, while engaging in highly limited typing. (AR 57-58.)

Plaintiff points out that the record shows significant, pertinent, abnormal findings which the ALJ merely summarized. In July 2017 examination showed generalized tenderness as well as swelling in the bilateral hands. (AR 415.) John A. Hoehn, D.O. diagnosed rheumatoid arthritis. (AR 417.) A right-hand x-ray showed osteoarthritic changes with degenerative changes at the interphalangeal joints and first carpal metacarpal joint; a left-hand x-ray showed arthritic changes of the osteoarthritis type with degenerative changes most prominent at the first carpometacarpal joint and the interphalangeal joint of the first finger and distal interphalangeal joint of the fifth finger. (AR 418-19, 441-42.) In October 2017 Plaintiff saw rheumatologist James N. Dreyfus, M.D., who diagnosed inflammatory arthritis, sicca, and primary osteoarthritis of both hands. (AR 455.) Dr. Dreyfus' examination showed irritable wrists, swelling and tenderness of the second and third fingers bilaterally, tenderness of the right fingers, and tender carpometacarpal joints. (AR 460.) Examination in January 2018 showed swelling of the second and third fingers with tenderness. (AR 530.)

The ALJ summarized these findings of tenderness and swelling of the fingers but also noted there was no decrease in strength or loss of mobility in the upper extremities. (AR 23.) However, the ALJ did not explain how, given evidence of degenerative changes in the fingers coupled with tenderness and swelling, Plaintiff could handle and finger for up to 2/3 of the workday as "frequent" handling and fingering required. SSR 83-10; SSR 96-8p; *Scott*, 647 F.3d at 740; *Perry*, 945 F.Supp.2d at 965. The ALJ did not explain why the record supported that specific finding as opposed to occasional or less than occasional handling and fingering. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017).

The ALJ did not rely upon any medical opinion in this case (AR 23) and was not permitted to interpret the significance of the raw medical evidence herself in reaching RFC conclusions. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (collecting Seventh Circuit cases holding that ALJs may not "play doctor"); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("common sense can mislead; lay intuitions about medical phenomena are often wrong"). No physician opined that Plaintiff could perform the manipulative capacities the ALJ ascribed to her and Plaintiff did not testify that she could perform work tasks within the bounds of the ALJ's RFC. *See Garcia*, 741 F.3d at 762. Thus, Plaintiff argues that, rather than speculating about the limiting effects of Plaintiff's impairments on her ability to handle and finger, the ALJ should have summoned a medical expert to review the evidence and offer an opinion of Plaintiff's RFC that was supported by the record. *See Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018) (ALJ was not qualified to make his own determination without the benefit of an expert opinion); *Williams v. Berryhill*, 2017 WL 3130763 *9 (N.D. Ill. Jul. 24, 2017).

Further, the ALJ ignored Plaintiff's fatigue in the decision. The ALJ did not include a limitation to accommodate Plaintiff's fatigue in the RFC, nor did she address Plaintiff's fatigue-related allegations such as a need to nap during the day in the decision. *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (RFC assessments must include all supported limitations). Plaintiff complained of chronic fatigue on several occasions. (AR 340, 458, 497, 632.) Her husband also noted that she was fatigued. (AR 214, 218.) Plaintiff alleged that she took a nap daily and reclined in a recliner for 40% of the day. (AR 53.) Social Security Rulings make clear that once a claimant alleges a work-related functional restriction, the ALJ must explain how the evidence either supports or fails to support that restriction. *See* SSR 16-3p ("we will explain

9

which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions"); SSR 96-8p ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence"); *Myles v. Astrue*, 582 F.3d 672, 676-77 (7th Cir. 2009).

Here, Plaintiff repeatedly complained of fatigue to her providers, and Plaintiff contends that it was reasonable for her to need to nap during the day to alleviate pain and manage fatigue, as she alleged. (AR 340, 458, 497, 632.) The ALJ did not address Plaintiff's fatigue and did not explain why such an alleged limitation was unsupported. *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (ALJ did not explain why he did not believe claimant's testimony that he had to lie down several times daily to manage his pain)

Additionally, the ALJ did not explain how she considered how the aggregate effect of Plaintiff's impairments impacted her functionality. *See* SSR 96-8p (in assessing RFC, ALJ must consider limitations from all impairments); *Martinez v. Astrue*, 630 F.3d 693, 697-98 (7th Cir. 2011) (ALJ must addressed combined effect of all impairments). Plaintiff had impairments which affected her hands as well as her feet and ankles. (AR 17.) The ALJ did not explain why she did not determine that Plaintiff's pain was more severe given the aggregate impact of her pain-producing impairments. The ALJ instead made the conclusory remark that the RFC limitations accounted for those impairments, without explaining why Plaintiff was not more limited in her ability to stand, walk, handle, and finger where her major joints were affected by rheumatoid arthritis as well as degenerative joint disease. *See Akin*, 887 F.3d at 318 (ALJ should have developed a more fulsome record about Akin's testimony of pain before discounting it);

10

*Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017).

Finally, the ALJ found that Plaintiff had medically determinable non-severe anxiety with accordant mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and interacting with others. (AR 19.) The ALJ found the State agency doctors' opinions that Plaintiff had non-severe anxiety persuasive as it was consistent with the record. (AR 19.) The ALJ summarized some of Plaintiff's alleged mental limitations as well as the consultative examiner's findings, but omitted any mental limitations from the RFC assessment. (AR 19-20.) The ALJ held that in August 2018, Plaintiff's anxiety symptoms rarely occurred, treatment had provided significant relief, and Plaintiff expressed interest in being weaned off her anxiety medications. (AR 19.) However, Plaintiff actually stated in August 2018 that she was no longer working due to her immune deficiency, so her stress was greatly decreased. (AR 631.) That suggests that, were Plaintiff working, her stress level as a result of anxiety would be far higher, and that that condition would cause significant functional limitations. *See Scott*, 647 F.3d at 740 ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce").

Plaintiff contends that the ALJ erred by finding that Plaintiff's mental impairments were non-severe, claiming that the evidence shows that Plaintiff's mental impairments caused more than a minimal impact on her functionality and were thus severe: "An impairment or combination of impairments is found 'not severe'…when medical evidence establishes only a slight abnormality…which would have no more than a minimal effect on an individual's ability to work." SSR 85-28.

Plaintiff had significant memory problems manifesting in forgetting appointments and

11

names (AR 51); utilizing sticky notes and a booklet of notes at her hearing (AR 51); only being able to pay attention for 20-30 minutes and forgetting simple tasks (AR 58, 219); misplacing her keys; and forgetting where her mother lived, causing her to get lost (AR 219.) Plaintiff consistently complained of anxiety (AR 458, 499) and began to cry during her consultative examination due to anxiety. (AR 398.) At that interview she reported problems with names and basic math and had issues with serial sevens; examination showed a highly anxious affect, and she was in the borderline range of visual working memory. (AR 400-03.)

Plaintiff argues that the ALJ provided an inadequate assessment of why, based upon this evidence, limitations pertaining to concentration and memory deficiencies, such as a limitation on the complexity and pace of tasks Plaintiff could perform as well as an allowance for frequent breaks after brief periods of work, were omitted from the RFC assessment. SSR 96-8p; *Young*, 362 F.3d at 1003-05 (7th Cir. 2004). The ALJ focused on Plaintiff's purported improvement while failing to engage with significant abnormal evidence of anxiety-related limitations. *See Meuser*, 838 F.3d at 911 ("An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence.

In response, the Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were non-severe. The Commissioner states that the ALJ cited treatment history, a consultative examination, and the non-examining State agency doctors' opinions. However, Social Security Rulings and case law make clear that even non-severe impairments causing mild limitations must be accounted for in the RFC. SSR 96-8p (in assessing RFC, ALJ must consider limitations from all impairments, even those which are not severe);

12

The Commissioner contends that Plaintiff did not establish that her anxiety was severe when she was working, even if her anxiety had been higher during that time. The Commissioner cites a lack of anxiety treatment and an anxious affect on consultative examination without memory deficits. However, the record shows that Plaintiff began to cry during her consultative examination interview and became extremely anxious. (AR 398.) She reported problems remembering names and had trouble with basic math problems, despite an accounting background. (AR 402.) She had trouble with serial sevens, a task designed to measure concentration. (AR 400.) Examination also showed a mildly depressed mood and a highly anxious affect. (AR 401.) She was in the borderline range of visual working memory per the Wechsler Memory Scale-IV, a test designed to measure memory functions. (AR 402-03.) Plaintiff had some difficulty sustaining attention in order to encode and manipulate information per that test. (AR 403.)

The Commissioner notes some of this evidence but maintains that the consultative examiner found that Plaintiff had intact memory and did not suffer from severe memory problems. However, a plain reading of the examiner's report does not suggest that he implied that Plaintiff had no memory deficits. (AR 403.) By contrast, he noted weakness in visual working memory, but no severe memory problems. (AR 403.) Clearly, the ALJ found mild mental limitations, but then did not discuss the evidence probative of Plaintiff's serious memory issues, including needing sticky notes, forgetting appointments and names, misplacing keys, forgetting her mother's address (AR 51, 219) and being able to only pay attention for brief periods. (AR 58.) The ALJ did not explain why limitations pertaining to concentration and memory deficiencies, such as a limitation on the complexity and pace of tasks Plaintiff could perform, as well as an

13

allowance for frequent breaks after brief periods of work, were omitted from the RFC assessment. SSR 96-8p; *Young*, 362 F.3d at 1003-05.

The Commissioner maintains that the ALJ reasonably considered the evidence. The Commissioner contends that Plaintiff asks this Court to reweigh the evidence. However, Plaintiff is simply arguing that the ALJ did not weigh this evidence in the first place. *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions"). Clearly, this Court is required to review the evidence and determine whether the ALJ's decision adequately and accurately reflects the record. Otherwise, there would be no reason for the Agency to spend vast amounts of time and money preparing the Administrative Record for appellate review. Upon taking such a review, this Court concludes that the ALJ failed to consider all of the evidence in the record.

The Commissioner next contends that Plaintiff bore the burden of producing medical evidence to support her alleged physical limitations. Clearly, however, Plaintiff did so here, in the form of voluminous testimony and abnormal medical findings. *Scott*, 647 F.3d at 740 (remanding where the claimant produced evidence of her alleged limitation in the form of her testimony and medical evidence which the ALJ failed to account for in determining her RFC); *Vincent G. v. Saul*, 2020 WL 3046435 *12 (N.D. Ind. June 8, 2020). The Commissioner asserts that because the ALJ considered some medical evidence and Plaintiff's allegations, the ALJ explained the basis for the RFC conclusions. However, that is not the standard: SSR 96-8p requires that the ALJ describe, citing specific medical facts and non-medical evidence, how the evidence links up with the RFC conclusions. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). In light of all

14

the omissions and errors discussed above, it is clear that remand is required.

Next, Plaintiff argues that the ALJ's symptom evaluation is not supported by substantial evidence. The ALJ found Plaintiff's allegations of disabling symptoms not entirely consistent with the evidence. (AR 22.) The ALJ mentioned Plaintiff's activities of daily living, including caring for personal needs, caring for a dog, performing light and simple cooking, using the computer and phone, reading books, watching TV, and performing light cleaning. (AR 23.) Plaintiff points out that the ALJ did not explain how those activities undercut Plaintiff's allegations of a need to lie down and problems with extended handling, fingering, standing, and walking. (AR 48-51, 53, 55, 57-58, 207); *see Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence").

Moreover, the ALJ summarized Plaintiff's course of treatment (AR 21-22), but did not explain how Plaintiff's treatment factored into the subjective symptom evaluation as required by SSR 16-3p. Plaintiff underwent a left medializing calcaneal osteotomy, posterior tibial tendon debridement, flexor digitorum longus transfer, spring ligament repair, and gastrocnemius lengthening in October 2016. (AR 274.) She did not tolerate a trial of hydroxychloroquine due to side effects. (AR 525, 527.) She tried methotrexate, but stopped that medication after two months due to a history of immunodeficiency. (AR 56, 525, 527.) Plaintiff also alleged that Plaquenil, taken for RA and Sjogren's syndrome, caused stomach pain. (AR 243.) The ALJ did not explain why Plaintiff's willingness to undergo an invasive surgical procedure, as well as try strong medications with severe potential side effects in an attempt to obtain pain relief, did not better support her alleged limitations. *See* SSR 16-3p (ALJ to consider course of treatment, including

15

medications, and an inability to tolerate medication side effects is a valid reason for not continuing to take them); *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014). The ALJ did not explain why Plaintiff's providers would have prescribed this serious treatment unless they concluded that her pain and symptoms were severe enough to warrant it. The ALJ did not explain why she disagreed with that conclusion, and failed to factor Plaintiff's course of invasive care and trials of multiple medications into the assessment of whether her allegations were consistent with the record.

In response, the Commissioner contends that the ALJ properly noted Plaintiff's activities and treatment history in finding that her alleged symptoms were not entirely consistent with the record. The Commissioner notes that the symptom evaluation will not be overturned unless it is "patently wrong." However, in *Ghiselli v. Colvin*, 837 F.3d 771, 778-79 (7th Cir. 2016), the Seventh Circuit remarked that "[a]s the main factors identified by the ALJ as informing his negative assessment of Ghiselli's credibility were either improperly analyzed or unsupported by substantial evidence, the determination itself must be considered patently wrong." In other words, a symptom evaluation is patently wrong where an ALJ improperly analyzes a claimant's symptoms. The Commissioner states that the ALJ properly considered Plaintiff's treatment history, activities, and the medical evidence. The Commissioner points to the ALJ's summary of some activities of daily living.[2] (AR 23.) However, the ALJ failed to explain how the activities in question undercut Plaintiff's allegations of a need to lie down and problems with extended

---

[2] There is no requirement in the Social Security Act or supporting regulations that, to receive benefits, a claimant must be comatose or need skilled nursing home level of care. Rather, it is expected that a claimant will perform at least a minimal amount of daily activities in order to survive. *Hughes v. Astrue*, 705 F.3d 276, 279 (claimants have to engage in certain activities so as not to starve).

16

handling, fingering, standing, and walking. (AR 48-51, 53, 55, 57-58, 207). The Commissioner also asserts that Plaintiff concentrates exclusively on her hearing testimony, and that the ALJ "properly considered the record as a whole, including Plaintiff's earlier reports that did not describe limitations to the same degree, and drew appropriate conclusions regarding the consistency of Plaintiff's allegations with the record as a whole." Yet the Commissioner does not explain how she knows that the ALJ considered the whole record, since the ALJ did not evaluate significant evidence in the record. Finally, the Commissioner argues that the ALJ considered certain objective findings. However, the Commissioner does not link the ALJ's minimal consideration of those findings to Plaintiff's argument regarding treatment.

Accordingly, as it is clear that the ALJ erred in evaluating Plaintiff's symptom testimony and activities of daily living, the ALJ's decision is not supported by substantial evidence. Remand is thus warranted on all of the issues raised by Plaintiff.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: July 21, 2021.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court

17